UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Ronnie Cole,

        Plaintiff,

                    **Hon. Hugh B. Scott**
                        08CV699
                        Consent

       v.

                        **Decision**
                        **&**
                        **Order**

Brian Fischer, et al.,

        Defendants.

_____

  Before the Court are the following motions: respective motions for partial summary judgment (Docket Nos. 69, 94 and 95); plaintiff's motion to compel discovery (Docket No. 116); defendants' motion for an extension of time to complete discovery (Docket No. 137); plaintiff's motion to appoint counsel (Docket No. 145); defendant's motion for a protective order (Docket No. 148) and plaintiff's motion for the Court to subpoena records (Docket No. 151).[1]

---

[1] In addition, the plaintiff has requested that the undersigned recuse himself from this case (Docket No. 160). Although the plaintiff disagrees with some of this Court's decisions in this and other cases in which he is involved, the plaintiff has not articulated a basis warranting recusal on the part of the undersigned. The motion is denied.

1

## Background

The plaintiff, Ronnie Cole ("Cole"), commenced this action alleging that his rights under 42 U.S.C. § 1983 were violated because he was asked by a corrections officer to make a donation to the correction officer's church; that he was wrongly convicted of a misbehavior report for possession of a CD player in his cell; and that he has been otherwise harassed by various corrections officers. The plaintiff names 14 individuals as defendants in this action: Brian Fischer ("Fischer"), Robert Kirkpatrick ("Kirkpatrick"), Susan Shcumacher ("Shumacher"), Thomas Stich ("Stich"), D. Venettozzi ("Venettozzi"), Karen Bellamy ("Bellamy"), R. Shroder ("Shroder"), Michael J. Skelly ("Skelly"), D. McGuire ("McGuire"), Molloy "Molloy"), Miran Hodge ("Hodge"), R. Mehnert ("Mehnert"), B. Trotter ("Trotter") and D. Nixon ("Nixon").

More specifically, Cole alleges that on April 17, 2008, Hodge asked him to make a donation to Hodge's church in the amount of $1000. (Docket No. 1 at ¶ 20). The plaintiff asserts that he told Hodge's that he would do so, but that he never actually intended to make the donation, but instead was going to include the fact that Hodge's asked him for the money in a letter to the New York State Governor. (Docket No. 1 at ¶21). Cole asserts that he wrote a separate letter to defendant Kirkpatrick regarding Hodge's solicitation of money. (Docket No. 1 at ¶23). The plaintiff states that on April 28, 2008, Hodges asked him whether he made the donation to Hodge's church and explained that the money was to pay for an church function featuring Bishop T. D. Jakes, as well as entertainers Jay Z and Mary J. Blige. (Docket No. 1 at ¶25). Cole asserts that later that day, Hodges came back to Cole's cell, handed Cole a disbursement form and stated "Come on Ronnie, make it happen." (Docket No. 1 at ¶ 28). Hodges then allegedly stood there while Hodges made out the disbursement form. Cole asserts

that he did not print his name on the back of the form or place a postage stamp on the front "knowing that this would cause the inmate disbursement form to return." (Docket No. 1 at ¶ 28). Cole asserts that he sent a second letter to Kirkpatrick. (Docket No. 1 at ¶¶ 29-30). On April 29, 2008, the plaintiff asserts that Hodges again returned with the disbursement form, which was returned as Cole predicted, and that Hodges asked Cole to print his name on the back of the form and place a stamp on it so Hodges could bring it "up front" to be processed. (Docket No. 1 at ¶ 31). Cole alleges that he told Hodges to leave the form because he was busy with something, and that Hodges did so. (Docket No. 1 at ¶ 32). Cole asserts he reviewed the form and determined that Hodges had forged Captain M. Kearney's initials on the form. (Docket No. 1 at ¶ 32). The plaintiff alleges that he sent a third letter to Kirkpatrick. (Docket No. 1 at ¶¶ 33). On April 30, 2008, according to Cole, Hodges advised him that his Pastor had suggested that they should give tithings once a month. (Docket No. 1 at ¶ 34). Cole claims that Hodges asked him to give "a million dollars to the church." (Docket No. 1 at ¶ 35). Cole alleges that he wrote a fourth letter to Kirkpatrick. (Docket No. 36). The plaintiff states that on May 10, 2008, Hodges came to his cell and advised him that the money had not been received by Hodges' Church. (Docket No. 1 at ¶ 39). According to Cole, on May 11, 2008, Hodges came to his cell and gave him a CD player, with headphones and a CD of a religious sermon. (Docket No. 1 at ¶ 40). Three days later, on May 14, 2008, Cole asserts that he requested to speak with Sergeant Lambert. The plaintiff contends that when Lambert arrived at his cell on that date, Cole had the CD player "in full review to present it to" Lambert. (Docket No. 1 at ¶ 43). Cole claims that later that afternoon, he was told he had a phone call "up front with a Judge," but that when he arrived "up front" he was brought into a room with Lambert and three "IG Investigators." Lambert asked Cole for the CD

player and Cole stated that it was on the desk in his cell. According to Cole, one of the investigators then had a phone conversation with another correctional officer who initially stated that he could not find the CD player in the cell, but eventually found the CD player. (Docket No. 1 at ¶¶44-45) On May 15, 2008, Cole received a misbehavior report signed by defendant Skelly charging Cole with possession of contraband and smuggling. (Docket No. 1 at ¶ 45).[2]

Cole alleges that this is a "false misbehavior report" because the CD player was presented to him by Hodges. (Docket No. 1 at ¶ 46). Cole asserts that he has a right to be present during a cell search pursuant to Department of Correctional Services ("DOCS") Directive 4910. (Docket No. 1 at ¶ 47). Cole also contends that the false misbehavior report was written in retaliation against Cole because Hodges had been escorted out of the facility and was subject to disciplinary proceedings. (Docket No. 1 at ¶ 48). The plaintiff claims that he has been harassed in that he has been threatened, that his mail is placed in the wrong mail box, that he finds detergent in his drinks, staples and other things in his food. Cole claims that he complained about this to defendants Trotter and Malloy, but that they laughed at him, asked if he saw the movie "Shawshank Redemption," told him to file a grievance and that they would deny everything. (Docket No. 1 at ¶ 49).

On June 9, 2008, after a disciplinary hearing, Cole was found guilty of possessing contraband and sentenced to 30 days keep lock. (Docket No. 1 at ¶ 52). Cole alleges that he wrote letters advising defendants Fisher, Kirkpatrick and Schumacher of the alleged acts of retaliation against him. (Docket No. 1 at ¶ 58). The plaintiff further asserts that in July of 2008

---

[2] Cole acknowledges that the smuggling charge was dismissed but that he was found guilty of possessing contraband. (Docket No. 1 at ¶ 51).

defendant Mehnert continued the retaliation by threatening him, asking him for sex, calling him names and filing a false misbehavior report against him. (Docket No. 1 at ¶¶58-60).[3] Cole states that he again wrote to Kirkpatrick. (Docket No. 1 at ¶ 61). Cole claims that on July 31, 2008, he was "assaulted" by defendant McGuire "for turning in" defendant Hodges. (Docket No. 1 at ¶ 65). He claims that defendants Malloy and Skelly were supervisors to Hodges, Mehnert, Nixon and Trotter. (Docket No. 1 at ¶ 66).[4] The plaintiff alleges that defendants Fischer, Kirkpatrick, Schumacher, Stich, Shroder, Venettozzi, Bellamy, Skelly and Malloy failed to act to stop the various acts of retaliation. (Docket No. 1 at ¶¶ 68-74).

**Motions for Summary Judgment**

The plaintiff seeks partial summary judgment against all fourteen defendants (Docket No. 69 at page 1) as to liability based upon an alleged violation of his due process rights in connection with the June 9, 2008 disciplinary hearing in which he was found guilty of being in the possession of contraband. Cole asserts that he had requested copies of cell search slips and log books but that these requests were denied by Hearing Officer Gilbert Casaceli. (Docket No. 69 pages 3-4). Cole fails to articulate any basis to maintain this claim against defendants Bellamy, Schroder, Skelly, Malloy, Nixon, Hodges, Trotter or McGuire. Thus, the plaintiff's due process claims as against these defendants are dismissed. The plaintiff contends that defendants

---

[3] Cole states that after a hearing he was found guilty of harassment, but not guilty of threats. (Docket No. 1 at ¶¶ 61).

[4] The complaint also lists an additional individual as being under the supervision of Malloy and Skelly, however, the name is illegible. (Docket No. 1 at ¶ 66).

Kirkpatrick, Ventrtozzi, Fischer, Schumacher and Stich are liable for these alleged due process violations because they failed to correct them upon administrative appeal. (Docket No. 69 at page 7). These defendants have cross-moved for summary judgment (Docket No. 95). The defendants contend that the documents requested by the plaintiff with respect to the June 9, 2008 disciplinary hearing were not material inasmuch as there was no dispute that Hodges presented Cole with the contraband. (Docket No. 99-3 at page 12). There was no dispute as to whether Cole voluntarily advised Officer Lambert that Hodges have given Cole the contraband. (Docket No. 99-3 at pages 20-23). There was no dispute that Cole cooperated with the investigation relating to Hodges providing the CD player to Cole. (Docket No. 99-3 at page 26). Notwithstanding Cole's cooperation, Hearing Officer Casaceli found Cole guilty of possession of contraband (but not-guilty of the smuggling charge also included in the misbehavior report). Contrary to Cole's contention, Hearing Officer Casaceli explained this decision to him by advising Cole that "possession of contraband no mater how received is still a violation of rules in this and any other facility." (Docket No. 99-3 at page 56). In light of the agreement as to the factual circumstances relating to how Cole obtained the contraband, as well as the agreement relating to Cole's conduct in bringing Hodges' actions to the attention of the authorities, the documents requested by the plaintiff did not go to any disputed issues. Thus, the failure to provide those documents to Cole did not constitute a due process violation.

Moreover, Cole was sentenced to only 30 days keeplock as a result of the disciplinary proceeding at issue. An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The duration and

conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship." See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.2004). While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the Sandin standard, Courts in this Circuit had held that punishment more severe than 30 days of keeplock was insufficient to establish a protected liberty interest. See Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir.1999) (101 days in normal Special Housing Unit conditions was not atypical or significant); Walker v. Caban, 2008 WL 4925204, at *11 (S.D.N.Y. Nov.19, 2008)(finding 90 day period in solitary confinement, without more, did not implicate a liberty interest under Sandin); Rivera v. Coughlin, 1996 WL 22342, at *5 (S.D.N.Y. Jan.22, 1996) (89 days in keeplock does not create a liberty interest). The plaintiff has not articulated a protected liberty interest under the undisputed facts in this case.[5] Thus, the plaintiff's motion for partial summary judgment (Docket No. 69) is denied, and the defendants motion for partial summary judgment (Docket No. 95) is granted.

Defendant Hodges also seeks summary judgment as to all claims against him in this matter. (Docket No. 94). Hodges asserts that the plaintiff has failed to articulate facts attributable

---

[5] The plaintiff filed several responses to the instant motions (Docket No. 108, 109, 110, 111, 112, 113, 114, 115, and 155). In some of these responses he attempts to raise new issues that are not included in the complaint. For example, Cole suggests that a question exists as to whether "double jeopardy came in to play" when Lambert asked the plaintiff if he was willing to talk to the Inspector General's investigator; whether the disciplinary hearing was held in a timely basis; or whether Casaceli (who is not a party to this action) was a fair and impartial hearing officer. (Docket No. 109 at pages 7-12). These claims are not contained in the complaint. In any event, these claims lack merit. The plaintiff has not articulated any factual basis which would implicate the constitutional prohibition against double jeopardy in this case. Further, the plaintiff's additional due process claims are not supported in the record and must also fail due to the fact that the plaintiff has not articulated a protected liberty interest arising out of the June 9, 2008 disciplinary proceedings.

to Hodges in support of his due process and retaliation claims. Much of the plaintiff's response to the instant motion is taken up with argument demonstrating that Hodges did, in fact, request that Cole donate money to Hodges' church and that Hodges took steps to facilitate Cole's donation.[6] However, the fact Hodges had, in fact, made a request to Cole for the donation and had taken steps to obtain the donation from Cole are not in dispute in this action. Indeed, it is undisputed that defendant Hodges was disciplined[7] by his employer for asking Cole to donate money to Hodges' church.

Hodges conduct in this matter is reprehensible. Hodges took advantage of his position of authority over an inmate to ask the inmate to make a donation to Hodges' church. Further, Hodges compromised the safety of the entire population of inmates and employees at the correctional facility by providing an inmate with contraband – a CD – which, if broken, could have been made into a weapon. Notwithstanding the outrageous nature of Hodges' conduct, the plaintiff has failed to articulate a constitutional claim attributable to Hodges. It is undisputed that the plaintiff did not make any payment to Hodges' church. Further, the plaintiff does not contend that Hodges took any action against Cole in retaliation for Cole's failure to make the payment.

---

[6] For example, Cole alleges that Hodges committed forgery by signing Captain Kearney's name to an inmate disbursement slip. (Docket No. 109 at page 10). Hodges denies the forgery claim, asserting that it was determined at the arbitration hearing relating to Hodges' employment status that Kearney had initialed the form. (Docket No. 94-2 at ¶ 20). In any event, it is undisputed that the disbursement slip, whether signed by Hodges or Kearney, did not result in any withdrawal or charge against the plaintiff's inmate account. This conduct is not material to the due process and retaliation claims brought by the plaintiff in this case.

[7] Hodges' employer, the Department of Correctional Services ("DOCS") had sought to terminate Hodges' employment based upon his conduct in this case. After an arbitration hearing, the Arbitrator determined that termination of Hodges' employment was excessive. Hodges was instead suspended without pay for five months. (Docket No. 94-2)

Cole asserts that summary judgment should be denied as to Hodges because Hodges "caused" the misbehavior report [by giving Cole the CD player and CD] which was the basis of the disciplinary action that led to the alleged due process violations. (Docket No. 109 at page 15).[8] This purported nexus is too attenuated to serve as a basis to maintain the due process and retaliation claims against Hodges. The plaintiff has not demonstrated, and the record does not reflect, that Hodges had any personal role in the writing of the disciplinary report leading to the June 9, 2008 hearing, the hearing itself, or any of the alleged acts of retaliation attributed to the other individual defendants. The plaintiff has failed to establish any factual dispute or legal basis to preclude the grant of summary judgment as to defendant Hodges.[9]

The plaintiff's motion for partial summary judgment is denied. The defendants' motion for partial summary judgment is granted to the extent that the plaintiff asserts due process claims arising in connection with the June 9, 2008 disciplinary proceedings. These claims are dismissed as to all defendants. Defendant Hodges' motion for summary judgment is granted and the

---

[8] This assertion also fails inasmuch as the Court has determined that no due process violation occurred in connection with the June 9, 2008 disciplinary hearing.

[9] The plaintiff has filed a motion seeking to compel discovery of the Inspector General's investigation and employment disciplinary proceedings against Hodges. (Docket No. 116). The plaintiff has articulated a basis to conclude that the Inspector General's investigation or the employment disciplinary proceedings against Hodges would include information relating to the claims in this case. The facts leading to the issuance of the misbehavior report in this case are undisputed. There is no basis to conclude that the Inspector General's investigation of Hodges would include information regarding the disciplinary hearing provided to Cole, or the acts of retaliation which Cole attributes to the other individual defendants. Thus, the plaintiff has not demonstrated that the sought after discovery is material to his claims against Hodges' (or any other defendant), or that this discovery is necessary to properly respond to the motion for summary judgment filed by Hodges. Thus, as discussed below, the motion to compel is denied to the extent the plaintiff seeks production of the Inspector General's investigation materials or the employment disciplinary proceedings against Hodges.

complaint is dismissed in its entirety as against defendant Hodges.

**Motions to Compel / Protective Order / Subpoena Records**

The plaintiff filed a motion seeking to compel defendant Hodges to produce certain discovery. (Docket No. 116). Other than seeking documents relating to allegations that Hodges took money from Hodges' mother's bank account, the plaintiff has not specified what specific information he was seeking from Hodges. Specifically, Cole seeks information relating to allegations that Hodges had taken $150,000 from Hodges' mother's bank account and had been "ordered" to repay the money. (Docket No. 116 at page 2). The plaintiff has failed to articulate how the transactions between Hodges and Hodges' mother are relevant to this action. In his reply to Hodges' response to the instant motion, Cole also asserts that he seeks documents relating to the Inspector General's investigation of Hodges' conduct. (Docket No. 124 at page 5). In this regard, Hodges has filed a motion seeking a protective order precluding production of the Inspector General's report. (Docket No. 148). Once again, the plaintiff has failed to articulate how the documents relating to the investigation and employment disciplinary proceedings against Hodges are relevant to the due process and retaliation claims asserted by the plaintiff in the complaint. Aside from the fact that the proceedings against Hodges arose due to the fact that he gave contraband to, and solicited money from, Cole, the proceedings against Hodges are not material to the claims brought by Cole in this action. Indeed, as discussed above, there is no material dispute as to the fact that Hodges gave the contraband to Cole; that Hodges solicited money from Cole for Hodges' church; or that Cole advised Lambert of Hodges' conduct. The motion to compel is denied as to defendant Hodges.

The plaintiff also asserts that he has attempted to get the administrative file and guidance unit record from the other individual defendants, as well as responses to the plaintiff's fourth set of interrogatories and documents requests. (Docket No. 116 at page 2). The defendants assert that they have since provided the discovery to the plaintiff, including responses to the plaintiff's fourth set of interrogatories and document requests. (Docket No. 130 at ¶3). The motion to compel is denied without prejudice. The plaintiff can file a new motion to compel if any outstanding discovery requests exist.

Finally, the plaintiff has filed a motion requesting the Court "to subpoena the defendant's counselor to turn over the Inspector General's Investigation Reports" as well as to compel the defendant's counsel to turn over records relating to the $150,000 allegedly removed by Hodges from Hodges' mother's bank account. (Docket No. 151 at page 1-2). For the reasons stated above, particularly that the plaintiff has not demonstrated that the requested information is relevant and material to the claims asserted in this case, the motion is denied.

**Motion to Appoint Counsel**

The plaintiff has again applied to the Court for appointment of counsel pursuant to 28 U.S.C. § 1915(e) (Docket No. 145)[10]. There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. In

---

[10] The plaintiff had previously requested the appointment of counsel (Docket No. 12). That motion was denied. (Docket No. 19)

re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following: (1) Whether the indigent's claims seem likely to be of substance; (2) Whether the indigent is able to investigate the crucial facts concerning his claim; (3) Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) Whether the legal issues involved are complex; and (5) Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); *see also* Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir.2001); Abdur-Raqiyb v. Erie County Medical Center, 2006 WL 1800710, at *1 (W.D.N.Y.,2006).

The Court has reviewed the facts presented herein in light of the factors required by law as discussed above. The record reflects that the legal issues presented are not unduly complex and that the plaintiff can adequately prosecute his claim *pro se*. Based on this review, plaintiff's motion for appointment of counsel is denied. It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654.

**Motion to Extend Discovery Period**

The defendants have filed a motion seeking to extend the discovery period in this case to allow for the deposition of the plaintiff. (Docket No. 138). The plaintiff opposes the request, primarily on the grounds that the request was made after the discovery deadline and because the plaintiff believes that the defendant's response to his discovery requests by the defendants were insufficient. (Docket No. 144). In this regard, the plaintiff points to the fact that he had not

received documents relating to the Inspector General's investigation of Hodges. (Docket No. 144 at ¶ 8). As discussed above, the Court has determined that the plaintiff has not articulated how the Inspector General's investigation of Hodges is relevant and material to the due process and retaliation claims asserted in the complaint.

The motion for a brief extension of the discovery period is granted. In this regard, the Court is guided by the fact that the public interest is best served when cases are decided on the merits. AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D. 104 (S.D.N.Y. 2000)(" It is unfortunate that this already complex and lengthy litigation may be protracted yet further. Under all the circumstances, however, a discretionary extension is warranted, and comports with the Second Circuit's clearly expressed preference that litigation disputes be resolved on the merits."); see also Mejia v. Castle Hotel, Inc., 164 F.R.D. 343, 345 (S.D.N.Y.1996); Cody v. Mello, 59 F.3d 13, 15 (2d Cir.1995).

The following dates shall apply:

1. All discovery, including the deposition of the plaintiff, shall be concluded in this matter by **August 31, 2010.** The parties shall file any motions to compel, if necessary, by **September 17, 2010.**

2. Any further dispositive motions shall be filed by **October 29, 2010**.

3. If not dispositive motions are filed, a status conference to set a trial date in this case shall take place on **November 16, 2010 at 2:00 p.m.** before the undersigned.

Inasmuch as the plaintiff is incarcerated, counsel for the defendants is directed to notify the facility at which the plaintiff is located to ensure that arrangements are made by the facility to allow the plaintiff with access to a telephone, as well as access to his legal papers relative to this action. Counsel for the defendant is directed to advise the court of a telephone number to be

used for the conference.

**Conclusion**

The plaintiff's motion for partial summary judgment (Docket No. 69) is denied. The defendants' motion for partial summary judgment (Docket No. 95) is granted consistent with the above. Defendant Hodges' motion for summary judgment (Docket No. 94) is granted and the complaint is dismissed as against defendant Hodges in its entirety. The plaintiff's motion to compel (Docket No. 116), motion for appointment of counsel (Docket No. 145), and motion to subpoena documents (Docket No. 151) are denied consistent with the above. The defendants motion for an extension of the discovery period (Docket No. 137) is granted. Defendant Hodges' motion for a protective order (Docket No. 148) is granted. The plaintiff's motion seeking recusal (Docket No. 160) is denied.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
July 20, 2010